IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00582-FL

| | |
|---|---|
| **Tammy Marie Hill,**<br><br>  Plaintiff,<br>v.<br><br>**Carolyn Colvin,** Acting Commissioner of Social Security<br><br>  Defendant. | **Memorandum & Recommendation** |

Plaintiff Tammy Marie Hill instituted this action on October 8, 2014, to challenge the denial of her application for social security income. Hill claims that Administrative Law Judge Katherine D. Wisz erred in her determination by formulating a Residual Functional Capacity ("RFC") that failed to include all her limitations and by finding Hill to be less than fully credible. Hill also claims that the additional evidence submitted to the Appeals Council warrants remand of the case for further consideration. Both Hill and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 15, 17.

After reviewing the parties' arguments, the court has determined that ALJ Wisz reached the appropriate decision. There is substantial evidence to support a finding that ALJ Wisz's RFC determination considered all of Hill's medically determinable impairments and that ALJ Wisz properly evaluated Hill's credibility. Additionally, the evidence submitted to the Appeals Council did not warrant remand for further consideration. Therefore the undersigned magistrate

1

judge recommends[1] that Hill's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that Commissioner's decision be affirmed.

I.   **Background**

On March 9, 2011, Hill filed an application for disability insurance benefits on the basis of a disability that allegedly began on February 26, 2010. After her claim was denied at both the initial stage and upon reconsideration, Hill appeared before ALJ Wisz for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Wisz determined that Hill was not entitled to benefits because she was not disabled. Tr. at 12–22.

ALJ Wisz determined that Hill had the following severe impairments: degenerative disc disease, anxiety disorders, and fibromyalgia. *Id.* at 17. ALJ Wisz also found that Hill did not have any impairments or combination of impairments that met or equaled a listing impairment. *Id.* at 15. ALJ Wisz determined that Hill had the RFC to perform light work with the following limitations: she is able to make work decision commensurate with performing simple tasks, with a predictable schedule and with no quota requirements; she can occasionally interact with com-workers and supervisors; she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds and can occasionally balance, stoop, kneel, crouch, and crawl; she can occasionally be exposed to pulmonary irritants (fumes, odors, gases, poor ventilation) and hazards; and she is unable to interact with the public. *Id.* at 16–17. ALJ Wisz concluded that Hill was incapable of performing her past work, but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. *Id.* at 21–22. These included warehouse worker, order caller, and office helper. *Id.* Thus, ALJ Wisz

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

found that Hill was not disabled. *Id.* at 22. After unsuccessfully seeking review by the Appeals Council, Hill commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on October 8, 2014. D.E. 6.

**II.     Analysis**

    **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's

3

impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

On May 20, 2009, Durham Regional Hospital admitted Hill for treatment of her right L5 radiculopathy secondary to a small right subligamentous herniated nucleus pulposus, facet degenerative disease, and lateral recess stenosis. Tr. at 287–90. Hill underwent surgical decompression with microdiscretomy/hemilaminectomy. *Id.* Durham Regional Hospital discharged Hill on May 23, 2009. *Id.* In March 2010, Hill experienced a recurrent L5-S1 herniation and Durham Regional Hospital readmitted her for treatment. *Id.* at 293–97. At that point, doctors performed another microdiscretomy/hemilaminectomy. *Id.*

From 2009 to 2011, Dr. Peter Bronec treated Hill for back and leg pain. *Id.* at 346–390. In May 2010, two months after Hill's second surgery, Dr. Bronec noted that the incision was healing well. *Id.* at 360. He also noted that results from a recent MRI indicated that Hill no longer had a herniated disc at L5-S1. *Id.* In November 2010, Dr. Bronec noted that Hill had discomfort in her back and her legs in the morning, but the pain subsided by the afternoon. *Id.* at 355. She could walk for as long as she liked on level surfaces, but had some pain with inclines. *Id.* In August 2011, Hill reported that she had persistent pain and intermittent muscle spasms in her lower back. *Id.* at 350–51. Dr. Bronec recommended a series of injections to relieve the pain. *Id.* After receiving the injections, Hill reported in September 2011 that her pain subsided, but

4

only while sedentary. *Id.* at 347. Three months later, in November 2011, after receiving another set of injections, Hill reported that her back pain subsided significantly. *Id.* at 448.

Hill also received care from Dr. Marion McCrary at Durham Internal Medicine Associates Triangle Orthopedics from 2009–2013. In March 2011, Dr. McCrary observed that Hill was still unable to work due to lumbar pain. *Id.* at 404. Dr. McCrary referred Hill to Carolina Orthopedic Clinic and she received an evaluation from Dr. Robert Minchew in April 2011. *Id*. at 417–421. At the evaluation, Hill stated that her back pain improved by 70%, but she had not returned to work. *Id*. at 418.

Hill also sought treatment from Dr. Robert Harrell, a rheumatologist at Triangle Orthopedic Associates. On May 21, 2012, Dr. Harrell observed that Hill had moderate to severe fibromyalgia and opined that this likely originated from her lower back pain. *Id.* at 455. Dr. Harrell recommended that Hill receive injections to lower her pain levels. *Id.* at 455–56. Approximately one year later, on June 27, 2013, Hill visited Dr. Harrell in connection with her lower back pain and fibromyalgia. D.E. 16-1 at 5. Dr. Harrell determined that Hill could stand for less than two hours in work environment, could rarely lift approximately up to two pounds, and would be absent from work at least four times a month. *Id.* at 2–3.

In September 2012, Hill received care from Dr. David Dallaero for arm and neck pain. *Id.* at 459. Ultimately, Dr. Dallero performed the following procedures on Hill's right shoulder: (1) rotator cuff repair, (2) arthroscopic biceps tendonesis, (3) arthroscopic acriomioplasty, (4) arthoscopic distal claviculectomy, and (5) arthroscopic glenohumeral joint debridement. *Id.* at 468. On October 11, 2012, Dr. Dallero noted that Hilll's incision sites were clean, dry, and intact and she was doing "okay." *Id.* at 474. On November 16, 2012, Hill physical therapist reported that she could make a full recovery. *Id.* at 483.

5

Hill also sought treatment for mental health issues. In January 2012, Anthony Smith, Ph.D., a licensed psychologist, diagnosed Hill with major depression. *Id.* at 438. Dr. Smith noted that Hill was alert and fully oriented to time and place. *Id.* He also noted that she appeared to have strong judgment and showed appropriate emotional expressions. *Id.* at 437–39. He recorded that Hill "appears to have a number of physical problems that could interfere with her daily functioning." *Id.* at 438. However, he went on to note that, "[Hill] would likely be able to interact with peers, co-workers, and respond appropriately to supervision." *Id.* at 439.

Disability Determination Services ("DDS")[2] evaluated Hill in March 2012. *Id*. at 71–85. DDS determined that Hill had a variety of postural limitations, such as climbing ramps, ladders, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 79. DDS's mental evaluation revealed that Hill was "capable of sustaining attention and concentration to perform simple routine tasks. *Id.* at 81. Ultimately, DDS found that Hill was not disabled. *Id.* at 84.

### D. Additional Evidence

Hill first argues that the Appeals Council erred in refusing to consider additional evidence. The evidence consists of a June 27, 2013 evaluation from Dr. Harrell and an accompanying treatment note. The Appeals Council took note of the additional evidence, but concluded that it did not affect the decision about whether Hill was disabled as of May 22, 2013. *Id.* at 1–2. The undersigned determines that Hill failed to demonstrate that the evidence was new and material; therefore, the Appeals Council did not err in its treatment of her submissions.

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953

---

[2] DDS is a North Carolina government agency in the North Carolina Department of Health and Human Services tasked with providing disability assessments for Social Security.

F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. However, the Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011); *Williams v. Colvin*, No. 5:12-CV-529, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (noting that the Appeals Council does not need to explain its reason for denying review of an ALJ decision) (citing *Meyer*, 662 F.3d at 702).

Here, the Appeals Council determined that the evidence "was about a later time" and therefore did not affect the disability determination. Tr. at 2. Hill contends that medical conditions referenced in the note relate to the time period prior to ALJ Wisz's determination. D.E. 16 at 5. Hill relies on the holding in *Bird v. Comm'r of Soc. Sec. Admin.,* 699 F.3d 337 (4th Cir. 2012), to advance her argument. In *Bird*, the Fourth Circuit held that "an ALJ just give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" *Id.* at 345. While *Bird* does not directly interpret the rule at issue here, other courts have utilized *Bird* to determine whether the Appeals Council should have evaluated medical evidence created after the date of the ALJ's decision. *See Booker v. Colvin*, No. 1:13-cv-2033-TMC, 2014 WL 6816878

(D.S.C. 2014) (analyzing *Bird* when it assessed whether evidence created after the ALJ's decision linked back to a prior condition).

Dr. Harrell's form and accompanying notes from June 27, 2013 relate to Hill's lower back condition that existed before ALJ Wisz's decision. D.E. 16-1. The form asked Dr. Harrell to identify Hill's physical limitations. D.E. 16-1 at 2–3. He identified one of the limitations as lower back pain. *Id.* A subsequent questions read, "You previously examined Ms. Hill on May 21, 2012 . . . . were the limitations described above present then?" D.E. 16-1 at 4. Dr. Harrell responded affirmatively. *Id.* He added that the conditions began in 2009, which corresponds to the year of Hill's first lower back surgery. As a result, this evidence sufficiently relates back to Hill's condition before ALJ Wisz's decision.

Although the evidence relates to the period on or before the date of ALJ Wisz's decision, Hill cannot satisfy the "new" or "material" elements under *Wilkins*. The evidence is not new because Dr. Harrell's second evaluation is duplicative. Dr. Harrell previously examined Hill on May 21, 2012, and his evaluation from that exam reads, "Clinically, she has fibromyalgia and widespread pain, typical trigger points, insomnia and fatigue. Her lower back is probably causing a lot of this . . . in addition, we discussed possible referral to a back or pain specialist." Tr. at 513–14. Similarly, the June 27, 2013 records read, "As discussed previously, she has fibromyalgia and widespread pain, typical trigger points, insomnia and fatigue. This is associated with severe chronic lower back pain…previous injections were not helpful . . . I don't really have a lot to offer at this point." D.E 16-1 at 5–6. This evidence shows that Hill's pain levels did not decrease after treatment, but does not reveal any new information about her condition. Further, Dr. Harrell's notes from Hill's first session, which were considered by ALJ Wisz, recommended that Hill receive injections and contemplated visiting a pain specialist. Tr. at 455. Dr. Harrell's

notes from the second session also recommended that she see a pain specialist. It does not appear that Dr. Harrell's treatment approach varied greatly during the second visit. Thus this evidence appears duplicative of prior evidence considered by ALJ Wisz.

In addition, this evidence is not material. First, ALJ Wisz considered the May 2012 treatment record from Dr. Harrell, which recommended largely the same treatment plan, and determined that Hill was not disabled. Further, Dr. Harrell's observation about the ineffectiveness of the injections would not change the outcome of this case. The record contains evidence that Hill's lower back condition did not always respond to injections or treatments. Dr. Bronec noted on December 7, 2010, that Hill complained that her injections did not help her lower back. *Id.* at 353. Dr. Bronec noted again on September 29, 2011 that Hill's injections only helped her pain while resting, but not while she was active. *Id.* at 347. Because ALJ Wisz considered prior evidence indicating that Hill's condition did not respond to injections yet still found that she was not disabled, it is unreasonable to conclude that Dr. Harrell's note would have changed the outcome of the case. Therefore, this evidence is not material.

Given that Hill is unable to demonstrate that the evidence submitted to the Appeals Council is both new and material, the Appels Council was not required to discuss the evidence or to remand the matter for further consideration in light of the additional evidence. Consequently, Hill has failed to assert a meritorious claim on this issue.

### E. Medical Opinion Evidence

Hill also contends that the Appeals Council and ALJ Wisz did not properly review the medical evidence from Dr. Harrell, Dr. McCrary, Dr. Bronec, and the state agency physicians. D.E. 16 at 8–11. The Commissioner maintains that these medical opinions were evaluated

9

Case 5:14-cv-00582-FL   Document 24   Filed 08/12/15   Page 9 of 18

appropriately. The undersigned determines that the ALJ properly assessed the evidence and explained her reasoning.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his

opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

### 1. Dr. Harrell's Opinion

Hill argues that the Appeals Council erred when it failed to consider Dr. Harrell's June 27, 2013 opinion. For the reasons stated above, the Appeals Council, which acknowledged this evidence, was not required to provide an additional explanation for rejecting it. Hill's argument on this point is without merit.

### 2. Dr. McCrary's Opinion

Hill contends that ALJ Wisz erred when she gave little weight to Dr. Marion McCrary's opinion. Dr. McCrary found that Hill could sit and stand or walk less two hours per day and would need to leave her workstation every ten minutes. Tr. at 537. Further, she found that she could rarely lift ten pounds and would be absent at least four days per month. *Id*. at 537–38. ALJ Wisz assigned little weight to Dr. McCrary's opinion because the weight of the evidence did not support her findings. In April 2011, Hill stated that her back condition improved by 70% since the corrective surgery and Hill's corresponding x-rays indicated normal alignment and no apparent instability. *Id.* at 418, 420. While Hill argues that a finding of stability does not equate with an ability to perform light work, medical records one month later noted that Hill was looking for work. *Id.* at 400. Furthermore, after Hill's arthroscopy on her left shoulder, her doctor reported that her elbow had full range of motion and her physical therapist reported that she had the potential to make a full recovery. *Id.* at 483, 494. In sum, the medical record reflects that Hill's back and shoulder conditions improved post-surgery. In light of contrary evidence in the record, ALJ Wisz did not err in assigning Dr. McCreary's opinion little weight.

11

### 3. Dr. Bronec's Opinion

Hill further argues that ALJ Wisz erred in affording substantial weight to Dr. Bronec's findings. D.E. 16 at 10. In November 2011, Dr. Bronec found that Hill should "avoid any prolonged sitting or standing, repetitive bending at the waist, or lifting more than 15-20 [pounds]." Tr. at 347. ALJ Wisz concluded that this statement "buttressed [her] contention that the claimant is able to perform light work with certain limitations." *Id.* at 21. Hill claims that ALJ Wisz misinterpreted Dr. Bronec's statement. D.E. 16 at 10–11. She argues that Dr. Bronec's notes indicate that she is unable to perform light work because she cannot sit or stand for a prolonged period of time. *Id.* In addition, she contends that Dr. Bronec's statement that she refrain from lifting 15–20 pounds does not show that she is able lift less weight. *Id.*

These arguments are without merit. A reasonable deduction suggests that if Dr. Bronec believed that Hill was unable to lift less weight than he advised, he would have indicated this in his note. Further, Dr. Bronec's statement that Hill should "avoid prolonged sitting or standing" emphasizes that Hill has postural limitations, but does not suggest that she it precluded her from pursuing work. As a result, ALJ Wisz's assessment is reasonable. Hill's ability to lift up to fifteen pounds indicates that she is able to perform light work and her postural limitations do not completely prohibit her from employment. The medical evidence of record also suggests that Hill's condition was improving. Moreover, even if ALJ Wisz misinterpreted Dr. Bronec's statements, the disability determination services physicians opined that Hill could perform tasks consistent with light work. *Id.* at 79, 81. As a result, the weight of the evidence shows that even

ALJ Wisz misinterpreted Dr. Broncec's statements, other evidence in the record supports a finding that Hill is able to work.

### 4. State Agency Physician's Opinion

Hill next argues that ALJ Wisz erred in giving the opinions of the state agency physician great weight. D.E. 16 at 11. The state agency physicians concluded that Hill could perform light work, remember simple tasks, and intermittently perform postural activities. Tr. at 78–84. ALJ Wisz concluded that the state agency physician's opinion deserved great weight because it was "consistent with the bulk of the medical evidence and Dr. Smith's opinions." *Id.* at 20.

Here, ALJ Wisz correctly allocated great weight to this opinion because it was corroborated by other evidence in the record. The state physician's determination was consistent with Dr. Smith's evaluation that Hill can perform simple tasks. Further, the state's conclusion that Hill can perform light work was consistent with Dr. Bronec's assessment. Hill also indicated that she was looking for work. *Id.* at 400. Even though Hill has been unable to secure employment or acquire additional training, this evidence alone indicates that she believed that she could satisfy the demands of employment. As a result, because the state agency's opinion was supported by evidence from the record, ALJ Wisz did not err in according great weight to this assessment.

### F. Residual Functional Capacity

Hill next argues that if ALJ Wisz did not err in weighing the evidence, her residual functional capacity would be significantly more restrictive. D.E. 16 at 11. Hill makes two arguments concerning ALJ Wisz's assessment. First, she contends that ALJ Wisz did not properly evaluate the medical opinions. Second, she claims that ALJ Wisz did not make proper findings based on the testimonial evidence.

As set forth above, if a claimant's impairment does not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, App. 1, then the ALJ must calculate the claimant's RFC to determine whether plaintiff can perform his past work despite his impairments. RFC is comprised of the following: (1) an individual's impairments and (2) any related symptoms that may cause physical and mental limitations that affect an individual's abilities in a work setting. 20 C.F.R. § 404.1545. To calculate an RFC, an ALJ must consider every impairment, even if it is not severe, and review all of the relevant medical support. *Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 727 (2014); 20 C.F.R. § 404.1545.

Hill's first argument is meritless inasmuch as ALJ Wisz properly evaluated the medical opinion evidence, as noted above. Hill contends that the RFC should have included limitations identified by the treating internist and the treating rheumatologist. As set forth above, Dr. McCrary's and Dr. Harrell's opinions were inconsistent with the other the medical evidence of record. As a result, ALJ Wisz properly assessed their opinions in calculating Hill's RFC.

Hill's second contention is also without merit. Hill argues that ALJ Wisz did not put enough emphasis on the vocational expert's testimony during cross-examination. During the hearing, ALJ Wisz posed a hypothetical to the vocational expert. During cross-examination, Hill argues that ALJ Wisz should have emphasized the following testimony about the hypothetical claimant's limitations:

> Q: Ms. Day, and this relates to, sort of, work schedule. If you could just take hypo[thetical] 1 and add the requirement for a five minute break every ten minutes. In other words, you've got frequent disruption. I'm assuming that precludes any kind of work activity.
>
> A: It would preclude all work.
>
> Q: And, of course, if the person is going to miss four or more days a month that's going to preclude everything as well.

14

  A:  Yes [phonetic].

Tr. 54–55.

  However, these limitation were not incorporated into the RFC determination. Hill appears to cite Dr. McCreary's findings that she would need frequent breaks and would frequently be absent from work. As noted above, however, ALJ Wisz concluded that Dr. McCrary's opinions deserved little weight, since they were not consistent with the medical evidence as a whole. *Id.* at 20. Because ALJ Wisz assigned less weight to Dr. McCrary's opinion and there was substantial evidence showing that these additional restrictions were unwarranted, they were not incorporated into the RFC and need not have been a limitation described to the VE in the hypothetical questions. *See Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989) (in order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments); *Copeland v. Bowen*, 861 F.2d 536, 540–41 (9th Cir. 1988) (an ALJ need only pose hypothetical questions that are based on substantial evidence and accurately reflect a claimant's limitations). Accordingly, Hill has not demonstrated any error by ALJ Wisz in failing to include additional limitations in the RFC or in the hypothetical questions to the VE.

  **G.**  **Credibility**

  Finally, Hill argues that ALJ Wisz improperly concluded that she was not credible. D.E. 16 at 12. The Commissioner argues that ALJ Wisz properly assessed Hill's credibility. The undersigned determines that the ALJ did not err by finding Hill not entirely credible.

  In *Craig v. Chater*, the Fourth Circuit set forth a two part test for evaluating a claimant's statements about symptoms in a social security case. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical,

physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, and the extent to which they affect his or her ability to work. *Id.* at 595.

The second part of the inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595–96. However, an ALJ is not obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96–7p, 1996 WL 374186, at *3.

Hill argues that because ALJ Wisz failed to evaluate the medical evidence properly, she could not accurately assess Hill's credibility. As determined above, ALJ Wisz properly evaluated the medical evidence. In connection with Hill's credibility, ALJ Wisz noted that the medical evidence showed that Hill was physically stable. Further, ALJ Wisz cited Hill's statements in the September 2011 adult function report that she could "cook small meals, do laundry, drive short distances, take care of her pet, load/unload dishwasher, manage funds/pay bills, operate a computer, spend time with others daily, get along with other people, wipe countertops, shop in

16

stores, finish what she starts, follow instructions well, get along with authority figures very well, and handle changes in routine." Tr. at 17–18. ALJ Wisz determined that, to a certain degree, Hill was able to function after the alleged disability date. *Id.* at 18. As a result, ALJ Wisz properly concluded that Hill's testimony regarding the severity of her impairments was not entirely credible.

## III. Conclusion

For the forgoing reasons, the court recommends that Wright's Motion for Judgment on the Pleadings should be denied, that Colvin's Motion for Judgment on the Pleadings should be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

**Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 12, 2015.

*/s/ Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE